19-2151 USA v. Adam Collard 19-2153 USA v. Joseph So one of your theories at trial, am I correct in inferring that one of your theories at trial was that these two brothers had not themselves engaged in accessing the child pornography, but that it was some hacker who had put on the child pornography on their computers? Was that one of your theories at trial? Absolutely. And that's what my clients had told me consistently. We had a chance to enter into a plea that would have been a reduced sentence. So you put that evidence in front of the jury. Is that correct? I did. So the jury considered that evidence and found your clients guilty. So I'm unclear what we're supposed to do with that. Well, a couple of things, Judge Warren. Those are questions that I can directly answer. In regards to such as the prior conviction, Judge Maloney ruled. I brought a motion eliminating prior trial. Judge Maloney ruled respectfully that the prior conviction would not come in. Unless something else happened. And as I understand it, that at trial, Judge Maloney considered the fact that you were challenging knowledge and intent and felt that the prior conviction, because it involved child pornography, could show those matters which you had put in controversy. Am I wrong about how I'm characterizing what happened? No, I think that's correct. And exactly on point, Judge, is the fact that, number one, my questioning of Walker Sharp, the forensic expert for the government, the last question that I would have asked him, and I have the question on page 354 of the transcript, line seven, Mr. Sharp, you can't say beyond a reasonable doubt that these files here have, were downloaded by Adam Collard or Joe Collard, can you? And his answer was definitively, I cannot say I wasn't there. And so I rested at that point. When the prosecution saw that answer to the question, and he definitively said, I'm the expert, and I can't say beyond a reasonable doubt that these boys put this stuff on their computer, that it wasn't subject to infiltration of their computer by a downloaded device like FrostWire. And I don't understand all the intricacies, but it's consistent with what Joe and Adam had told me, that they did not put these images on their computer. Now, you obviously know they didn't take the stand, but when the judge came back after lunch, he allowed that motion by the prosecutor to go ahead and put the conviction on the record. Now, everything's admissible under 41 Federal Rules of Evidence 401, but unless it's excluded by 402. And a couple of the things on 402 say, number one, it has to be relevant. Number two, it has to be reasonable within time, and it has to be the same or similar type acts. This was a conviction in district court, I believe, in Eaton County in 2001, 15 or 16 years previously. What was the conviction for exactly? The conviction was for, I can tell you, I have it right here. The conviction- It was for child pornography, wasn't it? Child sexually abusive material. Now, that's what was indicated. To rehabilitate that, I put the mother on who testified under, it indicates under 4A of that statute, a person that described in Section 7 or 1984 PA 343 MCL 752.367 or 2, a commercial film or photographic print processor acting pursuant to Subsection 8. In essence, there was 10 of these photographs. I put the boy's mother, Patricia Collar, on, and this could have been done on a hearing in camera, but I was caught off guard that the judge would revisit this. The photographs that they were found 15 years before were a series of eight or 10 photographs of teenage girls, 15 or 16, in a park where they had taken their tops off, and he had taken possession of it. It wasn't on a computer. He didn't use a computer. Could I ask a question at this point? Your challenge was under 404B. Is that correct? Correct. Not under relevance or some of those other things that you were mentioning earlier. That's correct. Okay. Under 404B, what the court is supposed to do is first determine whether the act occurred. We're not disputing that. Absolutely. Okay. So you're getting to whether it was for a proper purpose, and then whether there's balancing. Did you argue proper purpose, or did you just argue balancing? Yeah, I argued proper purpose. Why doesn't it help us identify the defendant, in this case, Adam, as the person who was using this evidence, as opposed to some other person, which you say is your legal theory for the whole case? That's my question. I mean, I assume you have an answer, but I want to know what your answer is. FBI agent Rodney Charles took the stand, took a photocopy of the judgment of sentence from Eaton County. They marked it as exhibit and entered it and said he'd been accused of having possession of child pornography. Why does that make it more likely than it otherwise would be that he's the person who was using the bad stuff on the computer, rather than some other hypothetical person? That's under identity. That's my question. Why does that help? I'm just talking about purpose now, because you say you challenge it under purpose. I guess you challenge it under purpose and under balancing. Is that right? Absolutely. The first of those two or the second of those three, why isn't it for a proper purpose of identity? That's my question. Or another proper purpose is motive. Why isn't it for identity or motive? Even if that comes in, there's a balancing test. All right. So now you're really going to the balancing. Yes. And I think it does a prejudicial effect outweigh the probative value. I want to be clear. You're not really focusing very strongly on the proper purpose issue. I think it's overwhelmingly prejudicial. All right. I understand. But you really don't leave us with much on prong two and take us directly to prong three. Is that fair? Yeah. Okay. Now what about prong three, which is the balancing? Why does it fail the balancing? If it's relevant and gives some evidence and you're challenging this, why can't the government put in additional evidence? Is it because people will, I don't know, what is the harm? Other than the harm of losing your case. But, I mean, what is the harm? No, sure. The harm is that they're going to associate it not only with Adam, but also with Joseph, who had no previous criminal record. And when I can move to consolidate the cases. Yeah. But with respect to Joseph, there was a clear instruction not to consider it at all. Is that correct? Yeah. And I think Joseph. I understand you can argue with respect to Joseph, but I'm asking now in particular in your representation of Adam. Yeah. I think it's arguing on behalf of Adam is it was too remote in time. It was not a computer. It was actually a photo that was a series of eight or 10 photographs that were found in his basement, which he, and he pled guilty to it. He said, yeah, I had gotten those from a friend. So it wasn't a computer crime. And they didn't just, I think we could have asked for an in-camera proceeding where the judge would determine number one, how is this close to what we're talking about? About downloading pornographic pictures on one's computer and possessing them. And I always remember Justice Brennan's definition of pornography. I don't know how to define it. And I think I'm paraphrasing, but I don't know how to define it, but I know when I see it, I stipulated that these photographs on these computers were pornographic. The prosecution brought up a black dildo that was found in a room. I'm afraid your time has expired. And so I know that our questioning has taken you beyond your time, but unless another judge has questions, I think we need to give your opponent her time and then you'll have your rebuttal time. I think we're all glad there's a mute button tonight, but just, I respect your opinion and I will say nothing further at this time. Thank you. Ms. Stanford. Thank you. May it please the court, Alexis Stanford appearing on behalf of the United States and like Mr. Nolan, I was trial counsel below in this matter. This court should affirm the convictions and sentences of both Adam and Joseph Collard. I'm going to spend just a little bit of time on the issues arising from the network investigative techniques before moving on to what judge Rogers called the good issues for the appellants. Certainly this warrant was sufficiently particular as noted in the Harney case, playpen existed for the distribution and viewing of child pornography. So logging on to that site after downloading a tour browser was sufficient and the warrant had a sufficient description of the place to be searched because all computers who logged onto that site were engaged in criminal activity, namely access with intent to view child pornography. And if the warrant exceeded the, the warrant exceeded the jurisdictional bases in rule 41 as it existed at the time. And if the warrant was void because of that, as outlined in Harney, Bateman and Moorhead, this search should still be upheld under Leon because these investigators acted in good faith in relying on the net warrant. And when the magistrate granted it, they were entitled to execute it. Is there anything about this case that is different from Harney, Moorhead and Bateman? No, the factual circumstances in all the cases are very similar. A user access to the playpen website, the network investigative technique was used to discover information about that user, namely an IP address, which led to a search of the residents where that IP address was servicing and child pornography was discovered. There isn't any real factual difference. What about this timing issue with respect to the settlement? You know what I'm referring to? I'm sorry. Settlement with a crossfire is that crossfire. And there was, and arguably before that, the situation was different. The situation was one where more easily mistakes could be made from the execution of the, of the warrant. I didn't say that very artfully, but I wonder how you, that you, you know what argument I'm referring to in there. I do respond to it. Certainly. The frost wire issue is separate from the network investigative technique issue. I see. And what was this issue with the frost wire settlement was whether frost wire was sharing more files than the user was aware of. So were people inadvertently or unknowingly engaging in file sharing or making files accessible to other users that they didn't realize that they were making accessible. And so what that goes to here is the district court's assessment that these defendants engaged in knowing distribution and whether that sentencing enhancement should be scored. Oh, so it's just a sentencing issue. It's not a search issue. Okay. Well, that's helpful to me. Thank you. Yes. I also don't think it's applicable to these particular defendants. They didn't provide any proof that they were running a legacy version of the software where that was an issue. And we didn't have any evidence that they were using a mobile version of frost wire where that was a problem. And so I don't think that they were impacted by the loopholes that existed in frost wire at the time. So, so getting back to these three cases, the theory of, of the defendant seems to be that somebody else put the child pornography on their computers, that there was a hacker or something like that. So how do you respond to that? There isn't any evidence of that. And the, the way that the network investigative technique worked as it's outlined in some of those cases, it just allowed the user's computer to send a signal back to the FBI that said sort of I'm computer X with this name, with this user login name, and here's my IP address. It didn't, but anything, any evidence on a device. And there was no prima facie showing of materiality to get the entire net source code by the defendants in the district court. Harney addressed this idea that, you know, did this plant evidence on devices? And they pointed out that in that case, the defendant couldn't show that the government engaged in wrongdoing in employing this technique or that the technique didn't operate as it was supposed to, which was only to obtain information from the computer, not put information on a computer. So that only leaves this court with conjecture about what other evidence there might have been in that net source code. And that's why in here and in Harney, the defense was not entitled to the entirety of that code. As to the 403 and 404B issues. First with the 403 evidence against Joseph Collard regarding the sex toy. This is an abuse of discretion on appellate review and the district court has very broad discretion according to some route in conducting that analysis because it's an on the spot balancing test. But this particular piece of evidence was relevant to show the user attribution of that particular device because it was such a personal item. So although it wasn't there, all sorts of other evidence that would be on somebody's computer, like that they were using the computer to buy things from Amazon that were not sex toys or banking or all sorts of other things. There were other things. There were emails, there was schoolwork from Joseph Collard, there were credit reports, there were other pieces of evidence. So you singled out something that was particularly likely to inflame a jury that he was buying what a jury might think are inappropriate sex toys, which tie in with his child pornography crime. I understand that it might have led the jury to some conclusions about him as a person. We didn't pick it to be particularly inflammatory. We picked it because it was so personal. So if the defense is, we rent a computing business and we let our employees use our computers and who knows who put what on these devices, this is the sort of thing that is so personal. It's probably only going to be something you do on a device that you keep to yourself. Whereas emails, you know, I might log into somebody else's laptop to check my email at some point. I might have schoolwork on various devices that I'm not worried about other people seeing. But this is the sort of thing where it indicates to a jury that he keeps this particular device closely held. And so not only does it provide strong user attribution for us, it also provides a strong inference about who's behind the other items that we find on that device. And I agree with some of the district court's assessment about how prejudicial this piece of evidence is in light of the other evidence in this case. When you consider the other things the jury was seeing, this was fairly tame, although certainly not as low key as emails or schoolwork would be in light of the other evidence.  jury was seeing. It's not a prior offense. It's not a fence at all. Right. Right. It was charged. It's challenged under four Oh three and whether the court did a proper balancing. There. I guess I'm working. So I don't want to. Tread on the thread of judge Morris question. Please go ahead. I'm more concerned with the four Oh three issue. If I have the numbers for four Oh four issue with the three steps. All right. How is it? Just. The prior offense. Has the smell of propensity. Why, what, what non propensity inference could be taken from this prior offense? Even if. I mean, because especially in the, in lieu of the fact, or in view of the fact that there's nothing about the prior offense, that's similar in the M O. That's my question. Well, I think this prior offense is very similar in that. It is really the exact same conduct that he's facing in one of these charges. We only introduced that he had this conviction. I know that his mother testified as to specifics about the conviction. I don't have any of that information. I don't know anything about the record on that particular case. But I do think that this particular. Piece of evidence was admitted for a proper purpose. Namely, it was absence of mistake. Knowledge and identity. And those were put squarely into play. You're not relying on motive. I'm not really arguing motive. No. I'm not arguing motive. I'm arguing absence of mistake. Yes. Because of the cross examination about whether this could have been malware that put this on these devices. Could there have been a virus that resulted in this? Did hackers do this? Did Adam employees in his computer business, put this on there without his knowledge. All of those put this squarely into play. And this was a piece of evidence that helped the government. Rebut that argument by the default. Rebut that argument. Other than by saying he has the propensity to do this kind of crime. It gives the jury evidence that this wasn't something that accidentally showed up. Or that someone else put there. It shows that. This was Adam acting. We know this because. He has this interest in children and he, this wasn't a mistake. This he did this knowingly. He was the person behind these downloads. It wasn't a hacker. Not the propensity to commit a crime. I think that when you get into identity arguments under 404, it gets very close to propensity, but I don't think that this was propensity here. I think it was admitted for these limited purposes, knowledge, knowledge, identity, and absence of mistake. And let me ask you this, assuming they even raised. This part of the analysis. If we were to disagree with you on that. Would you argue that the error would be in any event harmless? I do, because I still think there's a lot of that argument real briefly. Sure. I think that there was plenty of other user attribution on these devices to show that. Adam Collard was the one who owned the particular devices at issue. There were emails. There were his virtual business cards. There was a business proposal. He wrote, there was a letter from the IRS to him. He had his credit report saved on there, a purchase order pertinent to his business. There was a lot of evidence that this was Adam's computer, including that he was both the laptop and the desktop. He was listed as the registered owner. The file path where the child pornography was downloaded was users slash Adam slash Frostwire. So I think that there was plenty of evidence that it was Adam Collard who possessed the particular device as an issue where the child pornography was found. And that he was therefore the possessor of that pornography or the person that downloaded it. And all of that evidence that you've mentioned was in fact introduced as evidence at trial. Is that correct? Yes. I pulled that list just from reviewing the exhibits that we used at trial. Yes. Let me mark that. I hope Mr. Nolan will respond, will give us his response to that on repo. Thank you. I would also just like to distinguish a few cases that I think might seem on the more troubling for the government regarding 404 B and those are Jenkins and bell. And I think Jenkins is distinguishable here for two reasons. First, both here and in Jenkins, the district court was initially very skeptical about the admissibility of this evidence. And said, you know, I'm not sure that this should come in, but what happened in Jenkins is without any intervening reason, the court decided to admit the prior. Whereas here judge, the district court judge. Carefully exercise his discretion and initially kept this evidence out unless the door was opened by defense. And so that is one difference in between here and Jenkins. This was going to stay out. We were going to respect that ruling. Until they opened the door and we asked the judge to reconsider. The other difference in Jenkins is that the government wanted to introduce Evidence of a prior drug conviction to show knowledge and intent, but those weren't really. Issues that were contested in that case. In the Jenkins case, it was a house full of drugs. The drugs were everywhere. They were in the open. Whomever possessed them that court held didn't do it inadvertently. They knew what they had. And then intent, of course, there's some tension. About whether a prior comes in on a prior drug conviction comes in on a possession with intent to deliver. And here they decided that the prior wasn't that probative of intent. And the prejudice substantially outweighed it. And so here we have issues that were very much put into play by defense. Identity, knowledge, mistake. And evidence that was probative of that issue. And because it was so probative of that issue. It was not substantially outweighed by the prejudice. I would also know. The prior conviction does seem to be rather different though. If it was just for having some. Eight or 10 photos that are. My understanding and correct me if I'm wrong, they're just. Hard copy photos. We'll call it child pornography. Which were the conviction occurred 15 years ago. So this is a computer crime with. Numerous child pornography items on the computer. So, so should that factor in. To the determination of whether. A was Aaron B, whether it was harmless error to allow that conviction to be used as it was here. I think that. I don't particularly know. We did not know when we introduced the evidence, the specifics of the underlying crime, we had the certified record of the conviction that he had been convicted for. Possession of child sexually abusive material, which is what the state of Michigan calls child pornography. And that's what we introduced. His mother testified that they were just topless photos of a teenager. I didn't have that information. I don't think it changes the analysis here because it does show that. He is a person who has this interest that these things would have been on his computer deliberately, not. By mistake and not at someone else's hand, but because this was his particular interest. And I would also just respectfully know that although Mr. Nolan characterizes it as a 15 to 17 year old conviction. The conviction was in 2004 and the offense conduct and counts one and two was in 2012. So it's eight years, which is not nothing, but it isn't 15 years. And as we know from the Ismael case, there is no absolute. Maximum number of years at which it has to be excluded. I'd also like to just briefly touch on the bell case, which was another case where the court held that 404 B evidence was not admissible. And this was also a drug case where the government argued that his prior conviction was admissible to show absence of mistake. But the difference between Bell and what's happening in our case is that Bell didn't raise the issue of absence of mistake. He didn't say I possess that white powder and I thought it was flower. He said, I didn't possess those items. So the issue in Bell's case wasn't, did he mistakenly possess this? It was, he didn't possess it at all. And therefore the 404 B evidence wasn't probative to the issue before the jury here, absence of mistake was absolutely part of the defense. The computers were registered to Adam Collard. And so he wasn't saying these aren't my computers. He was saying, these are files that I, that could have been on there without my knowing it could be a virus or a hacker or an employee behind this. And I would also note that the Hardy case has since held that Bell is inconsistent with precedent and therefore not controlling. But regardless, I think that there's a difference here between the circumstances in Bell and Jenkins and Adam Collard's prior conviction. And then just briefly, I only have a few minutes left. I, the sentencing issues, as you know, the factual findings are reviewed for clear error. I don't think the court committed clear error in determining that these defendants knowingly engaged in distribution. These two brothers were pretty tech savvy. This is a case that involved use of the dark web tour browsers encryption. They had, they put on proofs that they ran businesses where they repaired and rebuilt computers. So it undermines the argument that they didn't understand how file sharing worked. And I would just point to the Dunning case where the court properly enhanced the sentencing for distribution, even though the defendant didn't admit that he knew how file sharing worked, but he also didn't produce any evidence to say, Hey, I had no idea. And so I think that that was properly scored. And I think certainly based on this record, the court was correct in concluding that this case involved the use of a computer. I am happy to answer any other questions with my remaining time or else I can rest on my brief. Any further questions? Oh, thank you. Thank you. Mr. Nolan, your time for rebuttal. Yes. Thank you. Look, I, before this trial, I had a great amount of respect for judge Maloney after this trial. I still have a great amount of respect for judge Maloney. I just happened to disagree. I hadn't had the occasion to meet prosecutor Sanford, but throughout this trial, I can say that she's was extremely professional. I just happened to disagree with her. She conducted a trial that, that, that reached a conviction. I objected to the photographs of which the U S attorney's office took in. I stipulated that they were pornography. And I said, it's only going to inflame the jury to show them. They had a big screen of 20 foot by 30 foot show eight photographs. Judge Maloney overruled me and said that she has a right to present them. And so she presented them. But I said, we'll stipulate that whatever you have in that book is pornography, child pornography. But I don't think it's appropriate to show the jury. You can eat all of these photos. I disagreed with the, the talking about show the jury, all these photos. What are you talking about? The photos for the current conviction? Yes. Okay. Yes. Thank you, judge. I'm sorry. I moved for a missed job because I said, it's not illegal. Even if Joe did possess a black dildo, it's not illegal. Number one, number two, it wasn't relevant. Number three, it wasn't even seized. The FBI agent did not take it into evidence. He didn't photograph it. He didn't market. We didn't. Mike, my client didn't testify, but what was indicated to me was, is that he never had a black dildo. There was a receipt that was marked in,  in, and it's highly prejudicial because they were saying that this is a, you know, sex object in that this not only spread a wide brush of paint across Joseph college, but Adam as well. And then with the previous conviction, it's clearly according to Jenkins, Jenkins under four, four B it's clearly what the court referred to as piling on. The prosecution didn't need this. In addition to everything else, the judge could have sustained it and said that the, for a number of reasons, the previous conviction as judge more addressed, didn't have anything to do with the computer. Wasn't the same type of a crime. We put on Patricia coward, the mother. She was not aware of, of these things other than when the conviction, my client, it was indicated he was convicted. He pled to the charge. He served a year in jail for possessing these. It wasn't one teenage girl. I think there was four or five. So it's, I stand corrected. Alexis, if you disagree, but I I'm not doing that for any other reason than that. It was totally a different subject or circumstances. It was not necessary. His conviction, the sex object, all of that was not coming in. And that's why I even brought a motion prior to trial to make sure that it was excluded. The only time that it was introduced by the U S attorney was when Walker sharp, their forensic expert determined that, that, that it was the case had gone South in a hurry. When he testified, that was the last question I asked him, whether or not you can testify beyond a reasonable doubt that they, Adam or Joe loaded this stuff on the computer. And he said, no, and that's when the motion was made. And all of a sudden the scrambling came with the previous conviction and, and all of that. But let me also address the issue in regards to, there was a question. I think you had judge judge more than I'm trying to recall that, that all of this seemed to be an effort, even with the refusal to convey to our forensic experts who we, we hired forensic computer experts. They went to the FBI. They couldn't take anything out of the room. We went to the FBI. We couldn't take anything out of the room for the source code. And the, the allegation was as well, they could be under court order, but they might violate that and reveal the source code that would tell us. And my position was, is that anybody that worked in that office could have revealed the source code. So it's for prosperous. If the judge issued an order saying you cannot reveal the source code, this is in, in camera. You can, you can use it to go and determine, but in, in the fourth circuit, I think they dismissed the case because the prosecution, the U S attorney's office refused to, to reveal the source code. And without a source code, we spent five or $10,000 for expert testimony. I say, we can't tell you what, where this all would have come from because we don't have the source code. And the source code was kept. Sacrosanct. If I might say, due to the fact that they didn't want other people getting it and revealing it. But if a computer expert is under a court order, not to reveal it. I think we can trust that the computer expert isn't going to reveal it. Your, your red, your timer has shown that your time has expired. It is your honor. And I appreciate the opportunity to appear before the sixth circuit court of appeals. Thank you very much. It's an honor to be here. Thank you. And thank you both for your argument and the case will be submitted.